CITY OF BEDFORD HEIGHTS, APPELLEE, v. FRANCE ET AL., APPELLANTS.

[Cite as *Bedford Hts. v. France* (1993), 67 Ohio St.3d 55.]

(No. 92–1161—Submitted May 18, 1993—Decided August 11, 1993.)

56

*Charles E. Merchant* and *Katharine Lang Bettasso,* for appellee.

*Lee Fisher,* Attorney General, and *Diane J. Karpinski,* Assistant Attorney General, for appellants Administrator, Bureau of Workers' Compensation and Industrial Commission.

*Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Robert Shepard, John A. Sivinski* and *Thomas M. Wilson,* for appellants Mary France McNerney and Ryan France.

*Stewart Jaffy & Assoc. Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* urging reversal for *amici curiae,* Ohio AFL–CIO and Ohio Academy of Trial Lawyers.

A. WILLIAM SWEENEY, J. In our view, the court of appeals majority did nothing more than reweigh the evidence and substitute its judgment for that of the trier of fact. Therefore, for the reasons that follow, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

The version of R.C. 4123.68 in effect at the time of decedent's death provided as follows:

"Every employee who is disabled because of the contraction of an occupational disease as defined in this section, or the dependent of an employee whose death is caused by an occupational disease as defined in this section, is entitled to * * * compensation* * *.

"The following diseases shall be considered occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section.

"SCHEDULE

"Description of disease or injury and description of process:

58

" * * *

"(BB) All other occupational diseases: A disease peculiar to a particular industrial process, trade, or occupation and to which an employee is not ordinarily subjected or exposed outside of or away from his employment." Am.H.B. 1282, 137 Ohio Laws, Part II, 3954, 3960.

In the syllabus of *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, this court interpreted the scope of the foregoing statutory language as follows:

"An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist: (1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."

The court of appeals held that while the first prong of the *Krise* test was satisfied, the evidence was "insufficient" to satisfy the second and third prongs of *Krise*. We disagree. It appears that the appellate court majority lost sight of the requirement of R.C. 4123.95 that R.C. 4123.68 "shall be liberally construed in favor of employees and the dependents of deceased employees." Instead, the court of appeals majority simply concentrated its attention on whether the evidence was sufficient to overcome a Civ.R. 50 motion for a directed verdict, and failed to even acknowledge the requirement to liberally construe all workers' compensation statutes.

As pointed out by appellate Judge Leo Spellacy in his dissenting opinion below, appellants submitted the videotaped testimony of two physicians who opined that decedent's "pulmonary embolism was peculiar to his work and that he had a greater risk of contracting it in a different manner than did the public generally." A review of appellants' expert testimony in light of the elements set forth in *Krise, supra,* reveals that sufficient evidence was presented to support the award of benefits granted to appellants.

That appellants satisfied the first prong of *Krise* is virtually unchallenged. With respect to the second and third prongs of *Krise,* Dr. Harris testified that "the thrombosis that developed someplace in [decedent's] lower body * * * [was] due to the sedentary nature of his activity for the previous six or eight hours, however long he was on the shift, prior to coming home," and that "there was a direct relationship between his duties on that shift and the development of the thrombosis of the lower extremities or the pelvis and the hemorrhagic infarct that was found at postmortem examination, and that was agreed upon as the cause of his death." Dr. Harris further testified that the basis of his opinion was his

"knowledge in the field of cardiovascular disease that [decedent] was exposed to a significant risk factor prior to his death, risk factor in the development of thrombophlebitis, and that there was no other risk factor that was presented to me that could have caused [the condition of decedent] found at postmortem." Additionally, Dr. Harris responded in the affirmative to the question whether decedent was more likely to develop thrombosis and the resultant pulmonary embolism than the public in general.

Dr. Levine also testified that it was his opinion that decedent "definitely had a greater risk and likelihood of developing a—a blood clot in his legs and a pulmonary embolism than the general public and general occupation." Dr. Levine stated that the basis of his opinion was that "the work which Mr. France did required periods of immobility and lack of activity causing stagnation of blood in his—the veins of his leg, which by mechanism, which I previously described, led to formation of blood clots and pulmonary embolism." In addition, Dr. Levine testified that the blood clots and pulmonary embolism which caused decedent's death "were definitely work-related."

We believe that the foregoing testimony was sufficient to satisfy R.C. 4123.-68(BB) as explained in the syllabus of *Krise.* In addition, the evidence proffered by appellants was substantial, competent evidence on which reasonable minds could differ. Therefore, the trial court correctly denied the city's motions for a directed verdict. See, *e.g., Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828, 837.

Here, the court of appeals majority simply substituted its judgment for that of the jury. While it is true that in the abstract, reasonable minds could reach different conclusions concerning whether decedent suffered an occupational disease that caused his death, it is also true that every tribunal reviewing this particular cause, save the court of appeals majority, concluded that decedent's death was due to a compensable occupational disease, and that, therefore, appellants were entitled to participate in the Workers' Compensation Fund. In light of *Krise,* R.C. 4123.68(BB) and the liberal-construction directive of R.C. 4123.95, we hold that the evidence in the record is sufficient to support the award of workers' compensation benefits.

Accordingly, the judgment of the court of appeals is reversed, and the judgment of the trial court is hereby reinstated.

*Judgment reversed.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and WRIGHT, J., dissent.

WRIGHT, J., dissenting. I agree with the posture adopted by the court of appeals and am convinced that the majority has misapplied the second prong of the *Krise* test, now codified in the first paragraph of R.C. 4123.68. See *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, syllabus.

MOYER, C.J., concurs in the foregoing dissenting opinion.